U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED
JAN 1 3 2005
ROBERT H. SHEMWELL, CLERK
BY_____ DEPUTY

CV05-0064 L0
JUDGE DOHERTY
MAGISTRATE JUDGE METHVIN

15TH JUDICIAL DISTRICT COURT
STATE OF LOUISIANA
PARISH OF LAFAYETTE

NO. 2000-3406     DIVISION "D"

JAMES TRUETT FIETZ, KYLE W. HALTER AND
AMERICAN PREARRANGED SERVICES, INC.

v.

SOUTHLAND NATIONAL INSURANCE CORPORATION

FILED:_____

        DEPUTY CLERK

### PETITION FOR DAMAGES

The petition of Messrs. James Truett Fietz and Kyle W. Halter (hereinafter, "Mr. Fietz", "Mr. Halter", or "Messrs. Fietz and Halter"), and American Prearranged Services, Inc. respectfully represents:

1.

Mr. Halter is a resident of Lafayette, Louisiana. Mr. Fietz is a resident of Wimberley, Texas. American Prearranged Services, Inc. is a Louisiana Corporation.

2.

The following party is made defendant in this suit and is indebted to petitioners for damages they have incurred resulting from its acts and omissions, together with legal interest thereon from the date of judicial demand until paid, all applicable attorney's fees, penalties, and all costs of these proceedings:

(a) Southland National Insurance Corporation, hereinafter, "Southland", an Alabama Corporation, is authorized to do business and conducts business in the State of Louisiana. Southland lists its authorized agent for service of process as:

     Louisiana Secretary of State
     8549 United Plaza Boulevard
     Baton Rouge, Louisiana 70809.

3.

Venue is properly laid in this district as a substantial part of the events or omissions giving rise to the claims occurred in this district. Also, Southland is subject to personal jurisdiction in this district because it is conducting business in this district. At all times material hereto, Southland was engaged in an industry affecting commerce.

EXHIBIT A

4.

Beginning on or about April 8, 2003 Southland engaged Mr. Halter as an independent contractor in Louisiana. At all times Mr. Halter, performed all of the duties assigned to him in a professional and competent manner.

5.

Beginning on or about April 8, 2003 Southland engaged Mr. Fietz as an independent contractor in Texas. At all times Mr. Fietz, performed all of the duties assigned to him in a professional and competent manner.

6.

Messrs. Fietz and Halter opened an office in Lafayette for and on behalf of Southland at Southland's request and instruction for which Southland agreed to pay the costs. Administrative duties for both Messrs. Fietz and Halter were carried on in the Lafayette office, located at 3414 Moss Street, Suite C, Lafayette, Louisiana 70507.

7.

Both Messrs. Fietz and Halter were long employed in the insurance industry. The company which previously employed Messrs. Fietz and Halter ceased operations. Due to their lengthy employment in the insurance industry Messrs. Fietz and Halter had contacts throughout the South -- from Florida through New Mexico.

8.

Southland, a competitor of Messrs. Fietz and Halter's previous employer, sought to benefit from Messrs. Fietz and Halter's contacts.

9.

Both Messrs. Fietz and Halter had been managers with their previous employer and had many agents reporting directly to them.

10.

Both Messrs. Fietz and Halter were well respected and had excellent reputations within their industry.

11.

At the time their former employer ceased its operations,

2

Messrs. Fietz and Halter intended to set up their own business which would offer services to the customers of their previous employer. However, Southland approached Messrs. Fietz and Halter about becoming associated with Southland, inquiring "what would it cost for you to come to work with us."

12.

Southland proposed a long term association with Messrs. Fietz and Halter. Southland assured Messrs. Fietz and Halter that they would receive all renewal commissions for any business they brought to Southland in addition to all commissions on original sales.

13.

In addition Southland proposed that Mr. Fietz become a "Regional Manager" for Southland with a base salary of $36,000.00 per year as well as "override commissions on business generated in your region". Additionally, Southland offered Mr. Fietz a "business development allowance" of $16,000.00 per month.

14.

Similarly, Southland proposed that Mr. Halter become a "Regional Manager" for Southland with a base salary of $36,000.00 per year as well as "override commissions on business generated in your region". Also, Southland offered Mr. Halter a "business development allowance" of $14,000.00 per month.

15.

Based on the representations of Southland that Messrs. Fietz and Halter would receive commissions on all renewals as well as commissions on original sales they agreed to become associated with Southland.

16

Subsequently, Messrs. Fietz and Halter recruited most of the agents, who had worked for Messrs. Fietz and Halter's former employer before it ceased business, to come to work with Southland.

17.

Furthermore, Messrs. Fietz and Halter contacted the customers of their former employer to secure the business of these customers for Southland.

18.

After their former employer ceased doing business, Messrs. Fietz and Halter recruited most of the agents who had worked for their former employer to come to work with Southland and obtained most all of the customers of their former employer to use the services of Southland. Then Southland notified Messrs. Fietz (May 26, 2004) and Halter (June 1, 2004) that effective July 1, 2004 that it was terminating "our compensation arrangements that we have with you." Thus, after Messrs. Fietz and Halter secured a substantial amount of business for Southland terminated its arrangement with them.

19.

Southland failed to fulfill any of the agreements made with Messrs. Fietz and Halter.

20.

Southland has failed to pay Messrs. Fietz and Halter any renewal commissions on the business Messrs. Fietz and Halter brought to Southland.

21.

Southland has failed to pay all of the original commissions due to Messrs. Fietz and Halter on the policies Messrs. Fietz and Halter sold.

22.

Southland has failed to pay the costs of the Lafayette office, located at 3414 Moss Street, Suite C, Lafayette, Louisiana 70507.

23.

As a result of the actions of Southland Messrs. Fietz and Halter incurred substantial office and marketing expenses which they would not have incurred but for their business arrangement with Southland. Southland has not reimbursed Messrs. Fietz and Halter for these office and marketing expenses.

24.

Before Messrs. Fietz and Halter agreed to become associated with Southland and secure substantial business for Southland, Southland misrepresented to Messrs. Fietz and Halter that they

4

would have a longterm business relationship with Southland.

25.

Following Southland's termination of its business arrangement with Messrs. Piets and Halter, Messrs. Piets and Halter entered into business themselves establishing "American Prearranged Services, Inc." based in Lafayette, Louisiana.

26.

American Prearranged Services, Inc. directly competes with Southland.

27.

After terminating the business arrangement with Messrs. Piets and Halter, Southland has disparaged Messrs. Piets and Halter and American Prearranged Services, Inc. to prospective customers. Southland has intimated that American Prearranged Services, Inc. is an undependable company and that Messrs. Piets and Halter have problems managing their business. Additionally, Southland told the agents who were recruited by Messrs. Piets and Halter to join Southland that there were problems with Messrs. Piets and Halter and for this reason they terminated the arrangement with them.

28.

The false and disparaging comments made by Southland about Messrs. Piets and Halter, and American Prearranged Services, Inc. in addition a form of slander/libel/harm to professional reputation. It is also an attempt to unfairly limit Messrs. Piets and Halter, and American Prearranged Services, Inc. ability to compete.

29.

By its actions Southland has attempted to limit the competition to itself and has caused injury to Messrs. Piets and Halter and American Prearranged Services, Inc.

30.

Southland's conduct described here also gives rise to a cause of action for detrimental reliance under Louisiana Civil Code Articles 1980 and 2315.

5

31.

Southland's conduct described here also gives rise to a cause of action for damages under Louisiana Civil Code Article 2315 based on misrepresentation, unjust enrichment and slander\libel\harm to professional reputation.

32.

Messrs. Fietz and Halter, and American Prearranged Services, Inc. seek a trial by jury and recovery of damages, costs, legal interest, and attorneys' fees.

WHEREFORE, James Truett Fietz, Kyle W. Halter, and American Prearranged Services, Inc. pray that the Court award judgment in their favor, including:

1. Damages, as may be proven, plus interest;

2. Award plaintiffs reasonable attorneys' fees and the costs of this action to be taxed against defendants.

3. Grant plaintiff such other and further relief as justice may require.

Respectfully submitted

*[signature]*
Roger D. Phipps #20326
PHIPPS & PHIPPS
ATTORNEYS AT LAW
210 Baronne Street, Suite 1410
New Orleans, Louisiana 70118
(504) 524-2298

Please Serve:

Southland National Insurance Corporation

c/o its authorized agent for service of process:

Louisiana Secretary of State
8549 United Plaza Boulevard
Baton Rouge, Louisiana 70809.

FILED THIS 7 DAY OF Dec 04
TRUE COPY ATTEST, LAFAYETTE, LA
*[signature]* Heather M. Comeaux
Deputy Clerk of Court