RECEIVED

APR 0 5 2007

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE-OPELOUSAS DIVISION**

**JAMES TRUETT FIETZ**                    **CIVIL ACTION NO. 05-0064**
**KYLE W. HALTER**
**AMERICAN PREARRANGED SERVICES, INC.**

**VS.**                                                    **JUDGE DOHERTY**

**SOUTHLAND NATIONAL INS. CO.**          **MAGISTRATE JUDGE METHVIN**

*RULING ON MOTIONS TO COMPEL*
*(Rec. Docs. 74 and 78)*

Before the court are two motions to compel: 1) A motion seeking supplemental

depositions and additional discovery filed on January 30, 2007 by defendant Southland National

Insurance Corporation ("Southland");[1] and 2) A motion seeking discovery responses filed on

February 16, 2007 by plaintiffs James Truett Fietz ("Fietz"), Kyle W. Halter ("Halter"), and

American Prearranged Services, Inc. ("APSI").[2]  The motions are opposed.

*Background*

Halter and Fietz began working with Southland in March, 2003.  Prior to beginning work,

Halter and Fietz allegedly entered into a business agreement with Dennis Painter ("Painter"),

Southland's president, wherein Southland would provide Halter and Fietz with override

commissions on all agents they brought to Southland for as long as the agents wrote Southland

policies.  The override commissions would continue to be paid to Halter and Fietz regardless of

whether Halter and Fietz were still with Southland.

---

[1] Rec. Doc. 74.

[2] Rec. Doc. 78.

2

Painter left Southland in May, 2004. On July 1, 2004, Southland sent termination letters

to Halter and Fietz advising that their contracts would cease. Halter and Fietz then formed APSI,

which directly competes with Southland. Thereafter, employees of Southland allegedly made

disparaging remarks about Halter and Fietz to agents and businesses in an attempt to limit the

ability of Halter and Fietz to compete with Southland.

Plaintiffs filed the instant lawsuit, claiming that they are entitled to damages for

detrimental reliance, unjust enrichment, breach of contract, and defamation.

### *Legal Analysis*

The pending motions relate to discovery, which is governed by Fed. R. Civ. P. 26.

Rule 26(b)(1) provides:

> Parties may obtain discovery regarding any matter, not privileged, that is *relevant to the claim or defense of any party* including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For *good cause*, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii).

## I.   Southland's Motion to Compel (Rec. Doc. 74)

Southland seeks to re-depose Halter and Fietz, as well as obtain discovery responses from

APSI.

### Supplemental Depositions of Halter and Fietz

On January 25-26, 2006, Southland deposed Halter and Fietz. Plaintiffs were questioned

concerning their damages, however, the depositions were taken before plaintiffs' expert had

rendered an opinion regarding the calculation of damages. Thereafter, in May, 2006, plaintiffs'

3

expert economist, Thomas R. Dalton, Ph.D., provided his report. Dr. Dalton supplemented his

report in September, 2006. Dr. Dalton's report projects what Halter and Fietz could have earned

had they not relied on Southland's alleged promise of override commissions, and instead had

gone directly into business for themselves.

Leave of court is required in order to depose someone who has already been deposed in

the case. Fed. R. Civ. P. 30(a)(2)(B). Leave of court is conditioned on the necessity of the

deposition in light of Fed. R. Civ. P. 26(b)(2), which provides, in part:

(C) The frequency or extent of use of the discovery methods otherwise
permitted under these rules and by any local rule shall be limited by the court if
it determines that: (i) the discovery sought is unreasonably cumulative or
duplicative, or is obtainable from some other source that is more convenient,
less burdensome, or less expensive; (ii) the party seeking discovery has had
ample opportunity by discovery in the action to obtain the information sought;
or (iii) the burden or expense of the proposed discovery outweighs its likely
benefit, taking into account the needs of the case, the amount in controversy,
the parties' resources, the importance of the issues at stake in the litigation, and
the importance of the proposed discovery in resolving the issues.

Southland argues that plaintiffs did not provide a basis for their damages for unjust

enrichment and detrimental reliance in their initial disclosures and discovery responses.

Southland maintains that plaintiffs did not begin outlining these damages until Southland filed a

motion for summary judgment and Daubert motion alleging that Dr. Dalton's first expert report

was flawed, because his analysis did not include an assessment of plaintiffs' claims for unjust

enrichment and detrimental reliance. Southland alleges that at that point, plaintiffs had Dr.

Dalton amend his report to assess the damages for unjust enrichment and detrimental reliance. In

doing so, Dr. Dalton relied on information that Southland characterizes as "previously

immaterial." Southland seeks to re-depose Halter and Fietz because:

4

In making his calculations, Dr. Dalton has made assumptions based on information allegedly provided to him by the plaintiffs. Southland is therefore entitled to question the plaintiffs regarding this data and the assumptions Dr. Dalton has made from them.[3]

Halter and Fietz object to being subjected to a second deposition. Halter and Fietz argue that Southland was aware of their unjust enrichment and detrimental reliance claims at the time of their depositions, because those claims were specifically pled in the complaint. Additionally, Halter and Fietz argue that they were questioned concerning damages in their depositions and they "set forth their damages calculations to the best of their abilities but noted that Dr. Dalton would prepare a more complete damages analysis."[4] Moreover, Halter and Fietz have provided to Southland all of the information that they gave to Dr. Dalton.

Although Southland argues that the supplemental depositions are necessary in order to determine what information Halter and Fietz provided Dr. Dalton and to question them about Dr. Dalton's assumptions and calculations, the undersigned concludes that there is no need to further explore this in a deposition as the information has already been provided by Dr. Dalton. Halter and Fietz provided Southland with the information given to Dr. Dalton. Dr. Dalton has provided two depositions concerning the information he considered, his calculations, and assumptions. Thus, the information sought by Southland from Halter and Fietz would be duplicative. Additionally, Southland could have questioned Halter and Fietz more in depth in the first deposition. Expert reports are usually provided after plaintiffs' depositions are taken, and defendants are not allowed to re-depose plaintiffs simply because an expert report contains

---

[3] Rec. Doc. 74-2 at p. 8.

[4] Rec. Doc. 94 at p. 3.

5

information that defendants, although fully aware of, failed to adequately explore in the deposition.

The undersigned understands that in some cases, a supplemental deposition may be necessary, but this is not such a case. Accordingly, the undersigned finds that Southland has not supported the motion to compel the production of Halter and Fietz at a supplemental deposition.

### Discovery Directed to APSI

APSI refuses to produce the following documents: 1) the names and other information of 317 agents for whom APSI receives override commissions; 2) written agreements it has with Unity and National Guardian Life; 3) insurance policies of Unity and National Guardian Life; and 4) Unity and National Guardian Life's commission schedules.

#### *Agent names*

After the filing of the instant motion, the Rule 30(b)(6) corporate deposition of APSI was conducted. During the deposition, APSI produced several documents previously withheld. Further, APSI disclosed that it receives a commission statement from Unity and National Guardian Life, insurance companies with which APSI does business. The statements "contain a detailed description of all the transactions for which APSI has received an override commission that week, including the name of the policy holder, the name of the agent, the basis for the override commission, and the amount of the override commission."[5] APSI provided the cover sheets for the statements, which summarizes the total amount of commissions, but refused to provide the agent names. The only agent names which have been provided are the names of the

---

[5] Rec. Doc. 87 at p. 5.

6

78 agents who Halter and Fietz had gotten to work for Southland but who left Southland and began working for APSI.

Southland argues that the names of the non-Southland agents for whom Halter and Fietz receive override commissions is relevant to the determination of damages for detrimental reliance. Southland maintains that without the names, it has no way of verifying APSI's claim that Halter and Fietz receive override commissions on 317 agents, or how productive these agents have been in the past.

APSI maintains that the agents are not APSI's agents, but rather are agents of Unity and National Guardian Life. APSI argues that the names of the agents are proprietary and/or confidential because Unity and National Guardian Life are competitors of Southland and production of the names of their agents may lead to an unfair advantage for Southland in contacting these agents. Moreover, the names of the agents are not necessary to any computation of damages because the only information that is relevant to such a calculation is the amount of the override commissions. Additionally, APSI produced "redacted documents it had received from Unity Insurance Company which provided persistency rates, premium production information, and information on number of policies sold for the agents for whom it receives override commissions."[6] The information that was redacted was the agents' names, the names and person information of the insureds, the face amount of the policy, and premium paid by the insured. Further, the override commission statements of Halter and Fietz from July, 2004 through February 9, 2007 have been produced.

---

[6] Rec. Doc. 90 at p. 6.

7

The undersigned concludes that the names of the agents are not relevant. The information regarding the actual number of agents and the commissions derived from each agent, however, is relevant. Accordingly, APSI shall produce copies of commission statements, with redaction of the name of the policy holder and the name of the agent. APSI shall assign each agent a specific number, which shall be put in the place of the agent's name on the commission statements. This will assist Southland in determining the number of agents for whom Halter and Fietz receive override commissions. APSI shall produce the documents within 14 days of the date of this order.

### *Unity and National Guardian Life information*

Southland seeks production of written agreements between APSI and Unity and National Guardian Life, Unity and National's insurance policies, and Unity and National's commission schedules. Southland argues that this information is necessary to determine the relationship that Halter and Fietz have with these companies so that it can be compared or contrasted to the relationship that they had with Southland. Likewise, the copies of the actual insurance policies sold by the agents for whom Halter and Fietz receive override commissions are necessary for a determination of whether "there are any differences between the Unity and National Guardian Life products that might have prevented Southland agents from leaving the company and coming to work with APSI."

APSI argues that production of the written agreements, including commission schedules, it has with Unity and National "puts APSI's business relationship with those companies at risk" and would adversely affect Halter and Fietz's ability to earn a living. APSI maintains that insurance industry is highly competitive and providing the information, specifically the

8

commission schedules, would give Southland an unfair advantage by allowing it to know the commission structure of its direct competitors. Additionally, APSI argues that since the insurance policies belong to Unity and National, APSI is not in a position to produce them.

The undersigned concludes that production of the commission schedules and insurance policies would be unduly burdensome to APSI. These documents are the proprietary interests of Unity and National, and requiring APSI to divulge this information in a highly competitive market may adversely affect APSI's business dealings with Unity and National Unity. Moreover, Southland fails to show the relevance of this information.

The remainder of the written agreements between APSI and Unity and National, however, are discoverable. The relationship that Halter and Fietz, through APSI, have with these companies relates to the damages sought. Moreover, APSI has not alleged any privileges protecting this information. Further, APSI has not shown that production of the agreements, without the commission schedules, would affect its business dealings with Unity and National. Thus, APSI shall produce the written agreements, without the commission schedules.

### Attorneys' fees

Southland requests that the court grant attorney's fees incurred in bringing the motion to compel. Rule 37(a)(4) provides that when a motion to compel "is granted or if the disclosure or requested discovery is provided after the motion was filed" the court shall award attorney's fees and expenses to the prevailing party unless the court finds that the opposing party's nondisclosure was substantially justified. As set forth above, Southland's motion was not granted in full. Accordingly, I find that plaintiffs' actions did not necessitate the present motion to compel, and

9

therefore, an award of sanctions pursuant to Rule 37(a)(4) of the Federal Rules of Civil

Procedure is not appropriate.

### Orders regarding Southland's motion

Considering the foregoing, Southland's motion to compel is **DENIED** in part and

**GRANTED** only to the extent that it seeks production of the commission statements and written

agreements between APSI and Unity and National. Accordingly, within 14 days, APSI shall

produce the redacted commission statements with agent numbers and the written agreements,

without the commission schedules, to Southland. Considering the confidential nature of the

documents, the parties shall submit, within seven days of this ruling, a joint confidentiality order

which will govern the use of the documents and protecting the proprietary information contained

therein.

## II.    Plaintiffs' Motion to Compel (Rec. Doc. 78)

Plaintiffs seek production of financial information from Southland that plaintiffs claim

is relevant to their unjust enrichment claims. The request for production and Southland's

response is as follows:

### Request for Production No. 4:

Please produce Southland's annual Financial Statements for each of the years
2001, 2002, 2003, 2004, 2005; for each year, please include Southland's
Balance Sheet, Income Statement Cash Flow Statement, and Statement of
Retained Earnings.

### Southland's Response to Request for Production No. 4:

Southland objects to Request for Production No. 4 on the grounds that it seeks
irrelevant documentation. The renewal commissions plaintiffs claim to owed

10

are based on policy sales by agents plaintiffs allegedly brought to Southland. Southland's Financial statements are irrelevant to this determination.[7]

Plaintiffs maintain that the financial information requested is relevant to the calculation of the amount to which Southland was unjustly enriched by the efforts of Halter and Fietz. Plaintiffs argue that Southland has produced some financial information showing that Southland's cash flow almost doubled from 2003 to 2004. Plaintiffs seek additional information regarding the entire company, which plaintiffs' expert can analyze to determine whether Southland's increased cash flow was a result of the work by the additional agents brought into the firm by Halter and Fietz.

Southland maintains the financial information sought is not the information which plaintiffs need in order to determine their damages. Instead, Southland argues that plaintiffs should have sought to discovery of the amount of revenue generated by plaintiffs' former agents and the amount of expenses (benefits, claims, etc.) Southland incurred in relation to the agents. Southland argues that with this information, plaintiffs may get a "decent picture of Southland's alleged unjust enrichment."[8]  Southland argues that plaintiffs have not propounded the discovery which Southland thinks is necessary, but instead plaintiffs seek financial data for the entire company, which includes information about divisions that are not engaged in the sale of the same type of insurance products as plaintiffs' agents were. Southland sets forth that this information should not be used by plaintiffs' expert, and that plaintiffs seek this information in order to argue to the jury that Southland's premium income increased after plaintiffs arrived at Southland.

---

[7] Exhibit to Rec. Doc. 78.

[8] Rec. Doc. 81 at p. 4.

11

The information sought clearly relates to plaintiffs' claims for unjust enrichment. In order to prove that Southland has benefitted from plaintiffs' efforts, plaintiffs will be required to show that Southland's profits increased since plaintiffs' brought their agents to Southland. Although Southland does not agree that the information sought is the most pertinent to plaintiffs' claims, Southland fails to show that the financial information of the company is not relevant.

Moreover, Southland's argument that plaintiffs' expert's analysis will be flawed if he uses the financial information sought in this discovery request, has no bearing on discovery. If plaintiffs' expert uses the information and it results in an unreliable report, Southland is free to file a Daubert motion or cross-examine the expert at trial to attack the expert's opinion. For the purposes of discovery, however, the information is clearly relevant, and therefore discoverable.

Considering the foregoing, plaintiffs' motion to compel is **GRANTED**. Southland shall supplement the Response to Request for Production No. 4, including all documents previously withheld, within seven days of the date of this order.

### Attorneys' fees

Plaintiffs request that the court grant attorney's fees incurred in bringing the motion to compel. The undersigned finds that Southland's refusal to provide the financial information sought was not substantially justified. Accordingly, I find that Southland's failure to timely and adequately respond to the discovery necessitated the present motion to compel, and therefore, an award of sanctions pursuant to Rule 37(a)(4) of the Federal Rules of Civil Procedure is appropriate.

Accordingly, it is **ORDERED** that, pursuant to F.R.Civ.P. 37(a)(4), Southland shall pay the attorney's fees and costs incurred in connection with the filing and prosecution of the instant

12

motion to compel. Counsel for plaintiffs shall file a motion and affidavit of fees and costs into the record within 30 days in order to assist the court in the assessment of a reasonable fees and costs award. The affidavit(s) shall contain: (1) The customary hourly rate of each attorney and paralegal involved; (2) a detailed description of each task completed, and a statement of the amount of time expended upon each task; and (3) an itemized list of expenses incurred. Failure to file the affidavit in the form required and/or within the deadline imposed will render the award null and void. Objections to the affidavit shall be filed within 15 days of plaintiffs' motion to set fees.

The Clerk of Court shall notice any motion and affidavit filed for consideration on the undersigned's May 2007 motion calendar, without oral argument, as an "assessment of Rule 37(a)(4) fees and expenses."

Signed at Lafayette, Louisiana on _____ April 5 _____, 2007.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, LA 70501
(337) 593-5140      FAX 593-5155