RECEIVED

JUN 0 1 2007

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

JAMES TRUETT FIETZ                              CIVIL ACTION NO. 05-0064
KYLE W. HALTER
AMERICAN PREARRANGED SERVICES, INC.
                                                JUDGE DOHERTY
VS.

SOUTHLAND NATIONAL INS. CO.              MAGISTRATE JUDGE METHVIN

## RULING ON MOTION FOR RECONSIDERATION
### (*Rec. Doc. 99*)

Before the court is a Motion for Reconsideration filed by plaintiffs seeking

reconsideration of the undersigned's April 10, 2007 ruling on plaintiffs' Motion In Limine

regarding applicable law.  Defendant Southland National Insurance Corporation ("Southland")

opposes the motion.[1]

### *Background*[2]

James Truett Fietz ("Fietz"), Kyle W. Halter ("Halter") began working with Southland in

March, 2003.  Prior to beginning work, Halter and Fietz allegedly entered into a business

agreement with Dennis Painter ("Painter"), Southland's president.  The alleged agreement

provided that Southland would provide Halter and Fietz with override commissions on all agents

they brought to Southland for as long as the agents wrote Southland policies.  The override

commissions would continue to be paid to Halter and Fietz regardless of whether Halter and

Fietz were still with Southland.

---

[1] Rec. Doc. 109.

[2] For a detailed review of the procedural and factual background, see Rec. Doc. 98.

2

Painter left Southland in May, 2004. On July 1, 2004, Southland sent termination letters to Halter and Fietz advising that their contracts would cease. Halter and Fietz then formed APSI, which directly competes with Southland. Thereafter, employees of Southland allegedly made disparaging remarks about Halter and Fietz to agents and businesses in an attempt to limit the ability of Halter and Fietz to compete with Southland. Plaintiffs filed the instant lawsuit

The parties filed motions seeking determination of the applicable law in this case. Since this is a diversity case, the undersigned applied the conflict of laws analysis of the forum state, i.e., Louisiana. Louisiana uses an issue-by-issue analysis in deciding what state law is applicable to claims.[3] Plaintiffs' argued that the court apply Louisiana law to all claims. Defendant filed a motion arguing that Alabama law should be applied to plaintiffs' claims of detrimental reliance, unjust enrichment, and contract claims, while Texas law should be applied to the defamation claims.[4]

After an exhaustive review of the law and facts, the undersigned entered the following orders:

**IT IS ORDERED** that defendant's Motion in Limine is **GRANTED in part and DENIED in part.**

**IT IS FURTHER ORDERED** that plaintiffs' motion is **GRANTED in part and DENIED in part.**

**IT IS FURTHER ORDERED** that Alabama law is applicable to plaintiffs' claims of breach of contract and detrimental reliance.

---

[3] La. Civ. Code Art. 3515.

[4] Rec. Doc. 56.

3

**IT IS FURTHER ORDERED** that Louisiana law is applicable to plaintiffs' unjust enrichment claims.

**IT IS FURTHER ORDERED** that Texas law is applicable to the defamation claims.

### *Legal Analysis*

The Federal Rules of Civil Procedure do not recognize a motion to reconsider *in haec verba*. *See* Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 173 (5th Cir.1990), *abrogated on other grounds by* Little v. Liquid Air Corp., 37 F.3d 1069, 1075 n. 14 (5th Cir.1994). The Fifth Circuit has held that a motion to reconsider a dispositive pretrial motion may be classified under either Rule 59 or Rule 60, depending upon the time of filing. Id. If the motion is filed within ten days of the court's judgment, a motion for reconsideration is treated as a Rule 59(e) motion "to alter or amend" the judgment. Id. If filed more than ten days after the judgment, a motion for reconsideration falls under Rule 60(b) as a motion for "relief from judgment." Here, the underlying motion was not a dispositive pretrial motion, however, the undersigned relies on the foregoing as a framework. Since, plaintiffs filed the Motion for Reconsideration less than ten days after the undersigned's ruling, the undersigned will analyze plaintiffs' motion under Rule 59(e).[5]

The court has considerable discretion to grant or deny a motion under Rule 59(e). Edward H. Bohlin Co., Inc. v. Banning Co., Inc., 6 F.3d 350, 355 (5th Cir.1993); Lavespere, 910 F.2d at 174. The court must "strike the proper balance between the need for finality and the need to render a just decision on the basis of all the facts." Bohlin, 6 F.3d at 355. It is well established

---

[5] The ruling was issued on April 10, 2007. According to Fed. R. Civ. Proc. Rule 6, the day of the act and weekends are not included in computing time delays that are less than ten days. Accordingly, the motion filed on April 23, 2007 was filed within ten days of the ruling.

4

that a party may not use Rule 59(e) to relitigate old matters, or to raise arguments or present

evidence that could have been raised prior to the court order. *See* Templet v. HydroChem Inc.,

367 F.3d 473, 479 (5th Cir. 2004); Simon v. United States, 891 F.2d 1154, 1159 (5th Cir.1990).

A review of the motion shows that plaintiffs' arguments are directed at establishing that

Louisiana law should be applied to all claims.  Plaintiffs allege that the undersigned's ruling

contained factual errors related to the following: 1) Southland had significant contacts with

Louisiana and set up a regional office in Lafayette, Louisiana; 2) the Lafayette office was not

Halter's office but rather was Southland's office; 3) Painter testified that he and Halter did not

have a deal at the end of the Alabama meeting; 4) Painter testified that he and Halter had a

meeting of the minds prior to Fietz's meeting in Alabama; and 5) Halter and Fietz recruited

funeral home owners to become Southland agents, but the agents were not Southland employees.[6]

The alleged factual errors do not alter the undersigned's ruling.  The undersigned

undertook a comprehensive analysis of the facts, and in addressing the contacts of the states

involved, the ruling states:

> With respect to state contacts, Halter is domiciled in Louisiana, Fietz is domiciled
> in Texas, and Southland is located in Alabama.  The first relevant contact between
> the parties was when Halter (in Lafayette, La.) called Painter at Southland's office
> in Tuscaloosa.  The partnership negotiations took place in Alabama, when Halter
> traveled from Louisiana to Tuscaloosa to discuss a business arrangement between
> Halter, Fietz, and Southland.  The negotiations were not complete during this
> meeting, however, because at the conclusion of the meeting, Painter advised
> Halter that he needed to discuss the matter with Southland's board.  Subsequently,
> Painter (in Alabama) called Halter (in Louisiana), and Halter agreed to the alleged
> offer made by Painter regarding Halter and Fietz working with Southland and
> receiving override commissions.[7]  Thereafter, Halter and Fietz flew to Alabama

---

[6] Rec. Doc. 99.

[7] Exhibit 1 to Rec. Doc. 60 at p. 109.

5

and met with Painter for a day-long meeting regarding the alleged partnership, during which Fietz claims Painter tried to close the deal.

Thus, the negotiations primarily took place in Alabama, with Louisiana's only contact being that Halter participated in two phone calls while in Louisiana. The parties did not meet in Louisiana, but rather the primary negotiations took place when Halter met Painter in Alabama.

Once Halter and Fietz were working with Southland, they brought in agents from Louisiana, Mississippi, Texas, Oklahoma, Florida, Tennessee, and New Mexico. Plaintiffs allege that Southland had agreed to pay override commissions to Halter or Fietz on any Southland policies sold by agents brought in by Halter or Fietz. The performance of the agreement – i.e. the sale of Southland policies and the payment of the commissions thereon – encompassed several states, including Louisiana and Alabama.

Considering the foregoing, the undersigned concludes that Alabama had the most pertinent contacts with the parties and the alleged partnership deal. Alabama was the center of the parties' negotiations, as well as the headquarters of the company which was to pay plaintiffs and employ their agents for whom they were to draw an override commission. Further, Painter did not visit Louisiana, thus any alleged representation he would have made to plaintiffs would have been made while he was in Alabama.[8]

Thus, the totality of the events show that the negotiations were centered in Alabama.

Although plaintiffs argue that they had an agreement with Southland prior to the day long

meeting in Alabama with Painter, Fietz, and Halter, Fietz's deposition testimony was that the

atmosphere of the meeting was one of encouragement by Painter to get Halter and Fietz to come

onboard and "close the deal."[9] Likewise, regardless of whether the office in Louisiana was

Halter's or Southland's, it is clear that Halter and Fietz did not perform their job duties, i.e.,

recruit funeral home owners to be agents, solely or even primarily in Louisiana. The recruitment

process spread throughout the south, encompassing several states. Thus, whether or not

---

[8] Rec. Doc. 98 at pps. 14-15.

[9] Exhibit 2 (Deposition of Fietz) to Rec. Doc. 60 at p. 57-59.

6

Southland had an office in Louisiana is not dispositive of the issue of where Fietz and Halter performed their end of the agreement.

Further, plaintiffs' allegations regarding legal errors are based on plaintiffs' disagreement with the undersigned's legal analysis, not a showing that the undersigned's analysis is unsupported by applicable law.

Plaintiffs continue to attempt to characterize certain claims as tort claims rather than contract claims, arguing that Louisiana law is applicable to these claims. Once again, plaintiffs argue that Breaux v. Schlumberger supports their argument that a detrimental reliance claim sounds in tort. 817 F.2d 1226, 1231 (5th Cir. 1987). However, as addressed in the ruling, in Stokes v. Georgia-Pacific Corp., 894 F.2d 764, 770 (5th Cir. 1990) the Fifth Circuit concluded that detrimental reliance is a contractual claim. The issue was again addressed by the Fifth Circuit in Copeland v. Wasserstein, Perella & Co., Inc., 278 F.3d 472 (5th Cir. 2002), which noted:

> We acknowledge that in Stokes v. Georgia Pacific Corp., we stated that an action based on a detrimental-reliance theory sounds in contract. Stokes was a classic detrimental-reliance case, however, in which a supplier made substantial investments relying on a customer's assurances of future purchases. Jurisprudence of the Supreme Court of Louisiana on prescription binds us in diversity, and that court reasoned in Roger v. Dufrene [613 So.2d 947 (La. 1993)] that "[i]t is the nature of the duty breached that should determine whether the action is in tort or in contract."

Thus, the determination of whether plaintiffs' claims sound in contract or tort is not disposed of by Breaux as argued by plaintiffs. Likewise, the nature of the remedy sought is not conclusive. Plaintiffs argue that the claims sound in tort because in their prayer for relief in the Complaint, they seek damages for Southland's "wrongful act" which has injured them. Plaintiffs

7

rely on a footnote in a case, which notes that "In examining pleadings to determine which cause

of action is pleaded, courts have focused on the nature of the relief requested." Fidelity &

Deposit Co. of Maryland v. Smith, 730 F.2d 1026 (5th Cir. 1984) *citing* Dantagnan v. I.L.A.

Local 1418, 496 F.2d 400, 402 (5th Cir. 1974 ("A plaintiff either may sue for damages for the

wrongful act by which he has been deprived of the thing [wrongfully acquired], or he may sue for

the restoration of the thing. One is an action in tort, ...; the other is an action in quasi-contract.").

Fidelity and Dantagnan dealt specifically with claims for damages arising from unlawful acts, not

claims arising from business arrangements as presented in the instant case. More importantly,

the cases cited by plaintiffs precede Copeland, which addressed the specific issues raised herein.

Thus, pursuant to Copeland, the court must consider the nature of the duty allegedly

breached in determining whether an action is a tort or contract claim. The undersigned did so,

and concluded that plaintiffs' claims were contractual because:

> Here, plaintiffs' detrimental reliance claim arises from representations that
> Painter allegedly made about partnering with Halter and Fietz, particularly that
> Southland would pay override commissions to Halter and Fietz for as long as
> the agents they brought to Southland continued to write policies for the
> company.[10] Although the petition characterizes the detrimental reliance claim as
> a tort claim, it is not the label that determines whether a cause of action is a tort
> or contract claim, but, under Copeland, the nature of the breach. Id. at 479.
> Plaintiffs allege that defendant breached a duty that was owed to them
> specifically, not a general duty owed to the public. *See* Harrison v. Gore, *supra*,
> 660 So.2d at 568. Moreover, the claim is not for misfeasance but rather for
> nonfeasance because defendant has not paid the commissions and expenses
> allegedly owed.[11]

[10] Rec. Doc. 71 at p. 21.

[11] Rec. Doc. 98 at p. 10.

8

Plaintiffs do not show any legal error in this analysis, but rather assert new facts aimed at establishing that the claim arises from a general duty owed by Southland, and therefore, the claims are tort claims. Plaintiffs assert that Southland had a duty to provide Halter and Fietz with correct information regarding Southland's future plans and that this was a "general duty Southland owed to all those who have dealings with it, not only Mr. Halter and Mr. Fietz."[12] Although plaintiffs characterize this as a general duty, it is clear that the claims arise from the duty that they allege Southland had to provide them with correct information regarding Southland's future plans for growth and plans for the agents which Halter and Fietz recruited. It is clear that this duty to provide information arose out of the negotiations of Halter and Fietz with Southland regarding the business agreement. The duty stems from the specific circumstances surrounding the business agreement – plaintiffs allege that Southland had a duty to provide correct information regarding Southland's future plans and that duty directly related to whether they would have entered the arrangement and whether they would have recruited certain agents. This is not a general duty owed to the public at large, but rather, a specific duty owed to a potential business partner in contract or employment negotiations. Thus, the duty was a specific one, and plaintiffs' argument otherwise is unconvincing and it in no way demonstrates that the undersigned's ruling was manifestly erroneous.[13]

---

[12] Rec. Doc. 99 at p. 20. The undersigned notes defendant's objection to this argument as being an untimely attempt to amend the Complaint and that plaintiffs do not state a claim. The undersigned's discussion of this issue is limited to the instant motion, and does not affect the merits of the claim.

[13] As the underlying ruling that plaintiffs' claims are contractual has not been successfully challenged, plaintiffs' argument regarding the application of the conflict of laws analysis as it pertains to torts (which state has the higher standard of conduct) is also without merit. Likewise, plaintiffs simply state that promissory estoppel is a tort, however, plaintiffs fail to show any error in the undersigned's analysis regarding detrimental reliance and promissory estoppel.

9

Based on the foregoing, the undersigned finds that plaintiffs' have not shown that the undersigned's April 10, 2007 ruling had manifest errors of law or fact.  Plaintiffs have simply rehashed the evidence, legal theories, and arguments (by repeatedly referencing the underlying Motion in Limine) presented in previously filed briefs and created new issues which should have been argued previously and which do not affect the ruling.  *See* Templet, 367 F.3d at 479.  In essence, plaintiffs simply disagree with the undersigned ruling and have re-urged the underlying motion, rather than pointing to any significant error of law or fact.  Considering the foregoing,

**IT IS ORDERED** plaintiff's Motion for Reconsideration is **GRANTED**, however, the request to vacate the portion of the April 10, 2007 ruling in favor of defendant is **DENIED**.

Signed at Lafayette, Louisiana on _____ June _____, 2007.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, LA 70501
(337) 593-5140      FAX 593-5155

COPY SENT:
DATE: 6/1/07
BY: CW
TO: nem